UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| JONATHAN C.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:22-cv-00150-KMB-TWP |
| | ) | |
| MARTIN J. O'MALLEY,[2] | ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff Jonathan C. applied for supplemental security income from the Social Security Administration ("SSA") on July 27, 2020, alleging an onset date of January 2, 2008.[3] [Dkts. 7-2 at 11; 7-5 at 2-3.] His application was initially denied on October 28, 2020, [dkt. 7-3 at 3-10], and upon reconsideration on April 16, 2021, [*id.* at 12-20]. Administrative Law Judge Dean Syrjanen (the "ALJ") conducted a hearing on November 17, 2021. [Dkt. 7-2 at 29.] The ALJ issued a decision on January 31, 2022, concluding that Jonathan was not entitled to receive supplemental security income. [*Id.* at 24.] The Appeals Council denied review on September 21, 2022. [*Id.* at

---

[1] To protect the privacy interests of claimants for Social Security benefits, and consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first names and last initials of non-governmental parties in its Social Security judicial review opinions.

[2] Pursuant to Federal Rule of Civil Procedure 25(d), Martin J. O'Malley automatically became the Defendant in this case when he was sworn in as Commissioner of the Social Security Administration on December 20, 2023, replacing Acting Commissioner of the Social Security Administration Kilolo Kijakazi.

[3] The cited document provides that Jonathan applied for SSI on September 8, 2020, but the Parties agree that Jonathan applied for benefits on July 27, 2020.

2.] On November 22, 2022, Jonathan timely filed this civil action asking the Court to review the denial of benefits according to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). [Dkt. 1.]

## I.  STANDARD OF REVIEW

"The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Stephens*, 888 F.3d at 327. "[S]ubstantial evidence" is "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). "[E]ven under deferential standard of review for social security disability cases, an [ALJ] must provide a logical bridge between the evidence and [the] conclusions." *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022) (internal quotations omitted).

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Stephens*, 888 F.3d at 327 (citing 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)). The ALJ must evaluate the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations omitted). "If a claimant satisfies steps one, two, and three, [he] will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then [he] must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id*. The ALJ uses the RFC at Step Four to determine whether the claimant can perform his own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (v).

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327. When an ALJ's decision does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Typically, a remand is also

appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

## II.  RELEVANT BACKGROUND

Jonathan was thirty-seven years old on the date his application was filed. [Dkt. 7-2 at 23.] He has a high school education and does not have any past relevant work.[4] [*Id.*]

The ALJ followed the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520(a)(4) and 20 C.F.R. § 416.920(a)(4) and concluded that Jonathan was not disabled. [*Id.* at 14-24.] Specifically, the ALJ found as follows:

- At Step One, Jonathan had not engaged in substantial gainful activity since July 27, 2020, which is the application date. [*Id.* at 13.]

- At Step Two, Jonathan had the following severe impairments: degenerative disc disease, obesity, depressive disorder, anxiety disorder, and migraines. [*Id.* at 14.]

- At Step Three, Jonathan did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [*Id.*]

- After Step Three but before Step Four, Jonathan had the RFC "to perform sedentary work as defined in 20 CFR 416.967(a) except never climbing ladders, ropes, or scaffolds; occasionally climbing ramps or stairs; occasionally stooping, kneeling, crouching, or crawling; and no exposure to workplace hazards such as moving mechanical parts and unprotected heights. He is limited to simple, routine, and repetitive tasks. He can maintain concentration, persistence, and pace for two-hour periods during an eight-hour workday for simple, routine, and repetitive tasks. He is limited to jobs with simple changes that occur no more than occasionally. He is limited to jobs where tasks can be performed independently and do not require tandem tasks. He is limited to occasional interaction with supervisors, coworkers, and the public." [*Id.* at 16.]

- At Step Four, Jonathan did not have past relevant work. [*Id.* at 23.]

- At Step Five, relying on the testimony of a vocational expert ("VE") and considering Jonathan's RFC, there were jobs that existed in significant numbers in the national economy that he could have performed through the date of the decision in representative occupations such as sorter, assembler, and visual inspector. [*Id.* at 23-24.]

---

[4] The relevant evidence of record is set forth in the Parties' briefs and need not be repeated here. Specific facts relevant to the disposition of this case are discussed below as necessary.

### III. DISCUSSION

Jonathan presents three arguments challenging the ALJ's decision. First, Jonathan argues that the ALJ erred at Step Three by failing to adequately explain why he found an examining physical therapist's medical opinion to be unpersuasive. Second, Jonathan argues that the ALJ erred at Step Three by failing to articulate an adequate explanation of how he evaluated the state agency psychological consultants' opinions and by failing to seek clarification on vague portions of these opinions. Third, Jonathan argues that the ALJ erred at Step Five by inappropriately finding 59,000 jobs in the national economy to be a significant number of jobs without exploring regional jobs numbers and relying on insufficient VE testimony. The Court will address each of these arguments in turn.

#### A. The ALJ's Consideration of Physical Therapist's Opinion

Jonathan claims that the ALJ failed to properly weigh Physical Therapist Nancy Mahan Turner's ("PT Turner") opinion, instead cherry-picking evidence to undermine the consistency of this opinion with other exam findings in the record and completely failing to address the supportability of the opinion. [Dkt. 11 at 9.] Jonathan argues that PT's Turner's opinion is not inconsistent with other record evidence. [*Id.* at 11.] He also argues that her opinion is supported by her examination report, which noted that Jonathan's "back pain limit[ed] gait and functional tasks[,] [Jonathan exhibited] labored breathing with overexertion," and Jonathan had instability with prolonged gait and standing tasks. [*Id.* (quoting dkt. 7-8 at 167).] Ultimately, the ALJ found PT Turner's opinion "minimally persuasive," but in making this finding, Jonathan asserts that the ALJ never really engaged with PT Turner's functional capacity evaluation findings. [*Id.* at 14.] By failing to do so, Jonathan argues that the ALJ did not address the supportability of PT Turner's opinion, which ALJs are specifically required to address under the regulations. [*Id.* at 14-15.]

5

Additionally, Jonathan claims that while the ALJ did address the consistency of PT Turner's opinion, the ALJ's evaluation of this factor was flawed because he expressly noted that deficiencies were present on examination by other providers but ultimately emphasized normal findings in the record. [*Id.* at 15.] According to Jonathan, the ALJ did not explain how normal findings—such as normal sensation, gait, and muscle tone—were inconsistent with PT Turner's evaluation. [*Id.*] Jonathan further argues that the ALJ's finding that PT Turner's opinion was "heavily" reliant on Jonathan's subjective complaints was erroneous given the many specific clinical findings and observed functional limitations identified in PT Turner's evaluation. [*Id.* at 16.]

In response, the Commissioner contends that the ALJ provided sound reasons for finding that PT Turner's opinion was only "minimally persuasive." [Dkt. 13 at 10.] Contrary to Jonathan's argument that the ALJ did not address supportability, the Commissioner contends that the ALJ discussed each portion of the opinion and explained why he found that it was unsupported by PT Turner's own examination. [*Id.*] Specifically, the Commissioner argues that the ALJ explained that certain portions of PT Turner's opinion were not directly supported by clinical findings, but rather, relied on Jonathan's subjective reports. [*Id.*] For example, the Commissioner points out that PT Turner did not observe any deficits in sitting during her evaluation, so the ALJ reasonably found that PT Turner's recommended sitting limitations relied on Jonathan's subjective reports. [*Id.* at 10-11.] Similarly, the Commissioner argues that there was no support beyond speculation for her opinion that Jonathan would need unscheduled breaks and multiple absences when performing sedentary work, which requires sitting most of the time. [*Id.* at 11.] The Commissioner explains that the ALJ found some portions of PT Turner's opinion were supported by her examination, but the ALJ also noted normal findings such as intact sensory function, normal muscle tone, and mostly full muscle strength from other examinations, and Jonathan has not

6

pointed to any specific abnormal findings that render the ALJ's weighing of the evidence improper. [*Id.* at 12.]

In reply, Jonathan reiterates that remand is necessary because even if the ALJ's evaluation of the consistency factor was supported by substantial evidence, the ALJ still completely failed to address the supportability of PT Turner's opinion. [Dkt. 14 at 1.] Instead, Jonathan argues that the ALJ did not seriously engage with PT Turner's exam findings and he allegedly downplayed or mischaracterized a great number of positive clinical findings within PT Turner's evaluation. [*Id.* at 2.]

When evaluating a medical opinion, an ALJ may consider the following factors: supportability, consistency, relationship with the claimant, specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(c). Of these factors, supportability and consistency are the most important. 20 C.F.R. § 404.1520c(a). An ALJ will explain how she considered the supportability and consistency factors when assessing a medical opinion, but she is not required to explain how she considered all factors. 20 C.F.R. § 404.1520c(b)(2). An ALJ may also consider whether the opinion is based on subjective complaints, rather than medical techniques, and whether the medical opinion is outside of the professional's specialization. *White v. Barnhart*, 415 F.3d 654, 659-60 (7th Cir. 2005).

The Court finds that there is substantial evidence supporting the ALJ's evaluation of PT Turner's opinion. First, the ALJ adequately considered the consistency of PT Turner's opinion with evidence from other medical sources in the record, and the ALJ did not cherry pick or otherwise disregarded any lines of evidence in doing so. Rather, the ALJ provided a balanced review of the medical evidence, noting that Jonathan "exhibited some deficiencies during physical

exams (*e.g.*, altered gait, decreased range of motion, and labored breathing)" but also explaining that Jonathan exhibited normal findings during other examinations, such as intact sensory function, normal muscle tone, and mostly full strength. [Dkt. 7-2 at 22.] Therefore, it is apparent to the Court that the ALJ did not only consider evidence that was inconsistent with PT Turner's opinion, and there is nothing in the decision to suggest that the ALJ mischaracterized PT Turner's clinical findings. By expressly noting why he found PT Turner's opinion to be inconsistent with other record evidence, the ALJ sufficiently articulated his consideration of the consistency factor. [*See id.* (explaining that PT Turner "opined that the claimant's pain or other symptoms constantly interfere with attention and concentration needed to perform even simple work tasks," but "[t]his opinion is inconsistent with the evidence showing that claimant was typically alert and fully oriented during medical appointments" and noting that while PT Turner "opined that the claimant needed to shift positions at will, take unscheduled breaks, and miss work excessively . . . and [had] difficulty with certain postural activities, this opinion is . . . inconsistent with evidence showing no significant problems with sitting for extended periods").]

Second, the ALJ also adequately considered the supportability factor. Jonathan claims that the ALJ completely failed to address this factor, but upon review of the ALJ's analysis, the Court finds that the ALJ expressly considered supportability in finding PT Turner's opinion minimally persuasive. For example, the ALJ explained that PT Turner's opinion was "extreme when compared to the clinical findings of record" and that PT Turner's opinion that Jonathan could only sit for thirty minutes at one time, stand for five minutes at one time, sit for less than two hours in an eight-hour workday, and stand/walk for less than two hours in an eight-hour workday "does not appear to be supported directly by any positive clinical findings, but rather relies heavily on the claimant's subjective reports." [*Id.*] The ALJ even acknowledged that certain parts of PT

8

Turner's opinion were supported by her findings, noting that her opinion that Jonathan could occasionally lift and carry less than ten pounds and rarely twenty pounds was "somewhat consistent with the strength deficits during her examination, in addition to the claimant's breathlessness with some activities." [*Id.* at 21.] Accordingly, the ALJ adequately considered the supportability factor.

Jonathan's criticisms of the ALJ's evaluation of PT Turner's opinion do not show that the ALJ committed reversible error; rather, they request that this Court reweigh the evidence, which it cannot do. *See Stephens*, 888 F.3d at 327 ("Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled."). Jonathan claims that the ALJ "never really engage[d] with the PT's actual functional capacity evaluation findings," but the Court finds that ALJ adequately considered PT Turner's underlying clinical evaluations, noting deficiencies that Jonathan exhibited during PT Turner's evaluation such as labored breathing with activity and difficulty with certain postural activities. [Dkt. 7-2 at 22.] The Court will not remand this matter simply because the ALJ did not expressly note all findings from PT Turner's evaluation. *See Crowell v. Kijakazi*, 72 F.4th 810, 815 (7th Cir. 2023) (explaining that an ALJ "is not required to spell out in the record every piece of evidence that he considered and then accepted or rejected"). Nor does the Court find that remand is required simply because the ALJ noted that PT Turner's opinion was speculative.

Finally, Jonathan argues that the ALJ erroneously considered that PT Turner's opinion was based on Jonathan's subjective complaints, but it is well within an ALJ's discretion to consider whether an opinion is based on subjective complaints rather than medical techniques. *See White*, 415 F.3d at 659-60. The ALJ's conclusion that PT Turner's opinion relied on Jonathan's subjective

9

reports of pain with respect to sitting is supported by substantial evidence in the record. [*See* dkt. 7-8 at 167 (PT Turner assessing that Jonathan was "able to sit and perform fine motor skills, although *he said* sitting for prolonged periods is bothersome also") (emphasis added). And while Jonathan correctly points out that PT Turner is an examining medical professional, the only factors an ALJ must expressly consider in the decision are supportability and consistency. *See* 20 C.F.R. § 404.1520c (providing that "we will explain how we considered the supportability and consistency factors" but "we are not required to[] explain how we considered" other factors, such as the medical provider's relationship with the claimant). For all of these reasons, the Court concludes that Jonathan has not shown that the ALJ committed reversible error on the points he raises in this section.

### B. The ALJ's Consideration of the Psychological Consultants' Opinions

Jonathan also claims that remand is required because the ALJ did not adequately explain how he evaluated the state agency psychological consultants' opinions. [Dkt. 11 at 18.] According to Jonathan, the ALJ found these opinions "generally persuasive" but apparently rejected the suggested social limitations in the opinions. [*Id.* at 19.] Rather than explaining how the suggested social limitations were inconsistent with or unsupported by the evidence, Jonathan argues that the ALJ instead offered his own psychological evaluation that "[w]hile the claimant's mental symptoms would likely interfere with interactions in the workplace, he was typically cooperative with an appropriate affect during medical appointments, thereby suggesting a capacity to interact with others in an appropriate manner." [*Id.* (quoting dkt.7-2 at 22).] The ALJ also acknowledged that the opinion that Jonathan "could attend to tasks for a sufficient period to complete tasks" was vague, but Jonathan argues that this acknowledgment was not a recognition of inconsistency or supportability, and the ALJ failed to seek clarification from either of the psychological consultants.

10

[*Id.*] As a result of their vagueness, Jonathan argues that the opinions do not explain how his moderate limitation in attention and concentration affects his functional ability, and the consultants' narrative opinions do not fully account for their limitations. [*Id.*] Lastly, Jonathan claims that the ALJ did not explain why his cooperation during medical appointments is inconsistent with greater social limitations, since his cooperation during a short treatment session does not reflect a baseline level of social interaction that he could sustain throughout the workday. [*Id.*]

In response, the Commissioner argues that the ALJ did not improperly offer his own psychological evaluation. [Dkt. 13 at 14.] Rather, the Commissioner contends that any reference in the decision to Jonathan's cooperative attitude during medical appointments came directly from treatment records, which the ALJ properly considered. [*Id.*] According to the Commissioner, Jonathan has not shown that further social interaction limitations are necessary. [*Id.*] Moreover, the Commissioner contends that the ALJ was not required to seek clarification from the psychological consultants because the regulations do not require that the ALJ recontact a doctor where there was adequate information to render a decision. [*Id.*] Although the ALJ acknowledged that the opinion that Jonathan could attend to tasks for a sufficient period was vague, the Commissioner argues that the ALJ did not indicate that the opinion was inadequate to make a determination, since the ALJ noted that this opinion was consistent with evidence showing normal alertness, orientation, and attention. [*Id.*]

In reply, Jonathan argues that the Commissioner's suggestion that the ALJ is free to disregard confusing parts of consultants' opinions is baseless. [Dkt. 14 at 6.] Jonathan maintains that the ALJ should have recontacted the psychological consultants about their allegedly vague opinions. [*Id.*] If the ALJ intended to rely on these opinions, Jonathan argues that he should have

11

sought clarification about what they meant when opining that he could attend to tasks for a sufficient period to complete tasks. [*Id.* at 7.]

The Court finds that the ALJ did not fail to adequately explain how he evaluated the state agency psychological consultants' opinions based on the specific arguments Jonathan raises in his brief. Jonathan faults the ALJ for offering a psychological opinion, but as the Commissioner correctly points out, the ALJ's reference to Jonathan's cooperative affect during appointments can be traced to treatment documents in the record. Thus, the ALJ was not offering a psychological evaluation but rather was citing records showing Jonathan's capacity for social interaction—it was in the ALJ's discretion to weigh such evidence in assessing the consultants' opinions.

Additionally, the ALJ did not commit reversible error by acknowledging the opinion that Jonathan "could attend to tasks for a sufficient period to complete tasks" was vague. Despite claiming that the ALJ should have contacted the consultants about this vague opinion or otherwise sought clarification about the meaning of this opinion, Jonathan has not cited any authority supporting his claim that the ALJ was required to do so. Instead, he cites SSA guidance documents on inadequate or incomplete medical source reports, but an acknowledgment that an opinion is vague does not mean that it is inadequate or incomplete. Jonathan also cites a non-binding case that provides only that an ALJ "should re-contact the doctor for clarification *if necessary*," and the ALJ in that case "simply rejected [the consultative examiner's opinion] for vagueness, with minimal analysis." *Tanya S. v. Kijakazi*, 2021 WL 6201733, at *12 (N.D. Ind. Dec. 31, 2021) (emphasis added). Here, unlike the ALJ in *Tanya S.*, the ALJ did not rely solely on vagueness in his analysis but rather provided a thorough review of the consultative examiners' opinions and explained how he weighed such opinions in light of the rest of the record evidence. This is not reversible error.

Furthermore, "[t]he duty to recontact [a consultative examiner] only applies where the evidence is insufficient to reach a decision," and Jonathan has not demonstrated that the ALJ "found the record as a whole inadequate to determine disability." *Brenda S. v. Kijakazi*, 2021 WL 3749048, at *4-5 (S.D. Ind. Aug. 25, 2021). Instead, the ALJ found that, despite its vagueness, the opinion that Jonathan could attend to tasks for a sufficient period was "consistent with the evidence showing the claimant reported problems with concentration, but he exhibited normal alertness, orientation, and attention during medical appointments," indicating that the ALJ found the opinion adequate to render a decision on its persuasiveness. [Dkt. 7-2 at 22.] In light of Jonathan's failure to offer any specific reasons why this vague opinion somehow renders the record inadequate or incomplete, the Court concludes that the ALJ had no duty to recontact or seek clarification from the consultative examiners. *See Britt v. Berryhill*, 889 F.3d 422, 427 (7th Cir. 2018) (explaining that an ALJ is not required to recontact a doctor where the record contains adequate information to make a decision on disability).

Consequently, the Court does not agree with Jonathan that the ALJ erred by relying on these opinions. In doing so, the ALJ weighed the psychological consultants' findings and sufficiently explained why he found Jonathan capable of the social limitations in the RFC. In particular, the ALJ relied on Jonathan's cooperative behavior and appropriate affect during medical appointments, which the ALJ explained suggested a capacity to interact with others in an appropriate manner. The ALJ supported this finding with substantial evidence and adequately explained why Jonathan could sustain the interaction requirements in the RFC. Jonathan has not shown that greater limitations are required.

Besides his arguments that the ALJ improperly offered a psychological evaluation, improperly relied on vague opinions, and did not explain how his cooperative mood was

13

inconsistent with greater social limitations, Jonathan has not made any other specific arguments about how the ALJ allegedly failed to address supportability and consistency or otherwise failed to adequately explain his consideration of the psychological consultants' opinions. Jonathan's broad assertions that consistency and supportability were not adequately addressed—without tying such claims to specific arguments—are insufficient. Thus, Jonathan has waived any additional arguments not specifically presented in his briefing, since the Seventh Circuit Court of Appeals has "repeatedly stated [i]t is not this [C]ourt's responsibility to research and construct the [P]arties' arguments." *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 397 (7th Cir. 2000) (citations and internal quotation marks omitted). "A party waives any argument that it does not raise before the district court." *Williams v. REP Corp.*, 302 F.3d 660, 666 (7th Cir. 2002).

In fact, Jonathan does not address any arguments related to the ALJ's consideration of consistency and supportability in his reply brief, instead arguing that the "Commissioner's suggestion that the ALJ is free to disregard confusing parts of consultant opinions is baseless." [Dkt. 14 at 6.] This further demonstrates that Jonathan's contention with the ALJ's analysis of the consultants' opinions is that he did not recontact the consultants to clarify their opinions, which the Court has already explained does not require remand. *See East v. Astrue*, 2010 WL 1751720, at *1 (S.D. Ind. Apr. 30, 2010) (interpreting the claimant's "failure to file a reply brief as an acknowledgment of the correctness of the Commissioner's" arguments); *Midwest Generation EME, LLC v. Continuum Chem. Corp.*, 768 F. Supp. 2d 939, 950 (N.D. Ill. 2010) (finding that "failure to respond to an opposing party's argument implies concession"); *Milam v. Dominick's Finer Foods, Inc.*, 567 F.3d 830, 832 (7th Cir. 2009) (interpreting "plaintiffs' silence in their response as acknowledgment").

The Court also notes that Jonathan's argument regarding the consultative examiner's checkbox opinions is underdeveloped. Jonathan argues that "the state agency consultants' narratives do not fully account for their checkbox limitations. Neither explain how a moderate limitation to attention and concentration impacts Jonathan's functional ability." [Dkt. 11 at 20.] This argument appears to be a critique primarily of the consultants—not of the ALJ—and Jonathan does not explain how the consultants' apparent failure to fully account for their checkbox limitations in their narratives renders the ALJ's consideration of their opinions inadequate. To the extent that Jonathan is arguing that any discrepancy between the check box evaluations and the consultants' narratives contributes to "vagueness," the Court has already explained that Jonathan has not met his burden of showing that the ALJ was required to seek clarification from the consultants about these opinions.

In sum, Jonathan's arguments do not show that the ALJ committed error but rather demonstrate his disagreement with how the ALJ weighed the relevant evidence. Given that this Court cannot reweigh evidence, Jonathan has not shown that the ALJ committed reversible error on the points he raises in this section.

### C. The ALJ's Finding that 59,000 Jobs was a Significant Number of Jobs

Jonathan argues that remand is required because the ALJ allegedly erred in finding that 59,000 jobs represented a "significant" number of jobs. [Dkt. 11 at 22.] Although Jonathan acknowledges that his "representative did not ask about regional job numbers," he nevertheless argues that remand is required so that the ALJ can ascertain the availability of such jobs in Jonathan's region. [*Id.* at 23-24.] Jonathan also argues that the ALJ committed reversible error by relying upon inadequate vocational expert testimony. [*Id.* at 24.]

In response, the Commissioner argues that the ALJ's Step Five finding was supported by substantial evidence. [Dkt. 13 at 17.] The Commissioner asserts that the Seventh Circuit Court of Appeals has not established a bright line rule for how many jobs constitute a "significant" number of jobs and does not require ALJs to determine regional jobs numbers. [*Id.* at 18-19.] Regardless, the Commissioner argues that Jonathan has waived any such argument regarding regional job numbers because, although Jonathan's counsel questioned the VE at the hearing, his counsel did not ask any questions about regional jobs numbers or otherwise object to the VE's testimony. [*Id.*] Likewise, the Commissioner argues that Jonathan's counsel failed to object to the VE's qualifications or testimony at the hearing, so Jonathan has also waived any arguments about the VE's methodology or the adequacy of the VE's testimony. [*Id.* at 20.]

In reply, Jonathan continues to argue that the ALJ did not meet his burden of showing that there is a significant number of jobs in the national economy that he could perform. [Dkt. 14 at 7.] In Jonathan's estimation, reviewing courts should be attentive to the difference between regional and national job numbers, and the ALJ should have elicited testimony from the VE that there were significant jobs in Jonathan's particular region, not just in the nation. [*Id.*]

"In determining whether there is a 'significant' number of jobs in the national economy, the regulatory scheme gives the ALJ discretion to decide, using substantial evidence, when a number of jobs qualifies as significant." *Milhem v. Kijakazi*, 52 F.4th 688, 696 (7th Cir. 2022). Substantial evidence is defined as "evidence a reasonable person would accept as adequate to support the decision." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012). Precedent from the Seventh Circuit Court of Appeals "does not provide a clear baseline for how many jobs are needed" for an ALJ to conclude that a "significant" number of jobs exist. 52 F.4th at 696.

16

The Court agrees with the Commissioner that Jonathan has waived any challenge to the VE's testimony regarding jobs available in the national economy and the ALJ's conclusion that there are a significant number of jobs that Jonathan can perform. Although Jonathan's counsel questioned the VE during the hearing, counsel did not object to the VE's qualifications or testimony about available jobs. [*See* dkt. 7-2 at 51, 55-57.] Nor did counsel object to the VE's testimony on the basis that a "significant" number of jobs did not exist in Jonathan's region. The Seventh Circuit Court of Appeals has explained that "[w]hen no one questions the [VE's] foundation or reasoning, an ALJ is entitled to accept the [VE's] conclusion." *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002). Thus, when a claimant does not object to a VE's testimony during the disability hearing before the ALJ, he forfeits any objections he might have raised for judicial review. *See Brown v. Colvin*, 845 F.3d 247, 254 (7th Cir. 2016); *Fetting v. Kijakazi*, 62 F.4th 332, 338 (7th Cir. 2023) (finding that "[a] claimant who fails to object at the hearing forfeits any challenge to the VE's testimony. This objection must be specific; to avoid forfeiture, a claimant must do more than make a general objection or vaguely ask the VE about his methodology"); *Leisgang v. Kijakazi*, 72 F.4th 216, 220 (7th Cir. 2023) (reiterating that a claimant "may not start objecting to unquestioned and uncontradicted VE testimony in federal court after the closure of the administrative record" and that when the claimant fails to raise a timely objection, the issue is forfeited unless the VE's testimony is "facially implausible or incoherent").

Regardless, the VE never indicated that the representative occupations were isolated to or concentrated in certain regions, [*id.* at 7-2 at 53], and the caselaw Jonathan cites does not support his assertion that an ALJ must specifically determine the regional availability of identified jobs. Accordingly, the Court finds that Jonathan has not shown reversible error on the points his raises in this section.

## IV. CONCLUSION

The standard for disability claims under the Social Security Act is stringent. *Plessinger v. Berryhill*, 900 F.3d 909, 911 (7th Cir. 2018). "The Act does not contemplate degrees of disability or allow for an award based on partial disability." *Williams-Overstreet v. Astrue*, 364 F. App'x 271, 274 (7th Cir. 2010) (citing *Stephens v. Heckler*, 766 F.2d 284, 285 (7th Cir. 1985)). "Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for by taxes, including taxes paid by those who work despite serious physical or mental impairments and for whom working is difficult and painful." *Id.* Taken together, the Court can find no legal basis presented by Jonathan to reverse the ALJ's decision that he was not disabled during the relevant period. Therefore, the ALJ's decision is **AFFIRMED**. Final judgment shall issue accordingly.

**SO ORDERED.**

Date: 3/6/2024

Kellie M. Barr
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email